1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JASON MOOMJY, individually and on behalf
of all others similarly situated,

                              Plaintiff,

        v.

HQ SUSTAINABLE MARITIME
INDUSTRIES, INC., NORBERT SPORNS
and JEAN-PIERRE DALLAIRE,

                              Defendants.

No.

CLASS ACTION COMPLAINT

Plaintiff has alleged the following based upon the investigation of Plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by HQ Sustainable Maritime Industries, Inc. ("HQSM" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.



CLASS ACTION COMPLAINT

1918 Eighth Avenue, Suite 3300 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

## I.      NATURE OF ACTION

1.      This is a federal class action on behalf of purchasers of the common stock of HQSM between May 11, 2009 and April 1, 2011, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      HQSM has been materially overstating its sales, revenue and net income since *at least* the first quarter of 2009.  These overstatements allowed the Company's stock to continue to trade at artificially high levels throughout the Class Period, and also allowed the Company to make two public offerings of its securities in 2009 and 2010.

3.      The Company continued to act as if its financial results and prospects were outstanding until March 16, 2011, when it announced that it would be unable to file its financial statements and annual report with the SEC on that date, as required by federal law, and was seeking a 15 day extension "due to delays in compiling information for the preparation of the financial statements."  The Company assured investors, however, that it "fully expected" to be able to file its 2010 financial statements by April 1, 2011.  In response to this unsettling news, HQSM shares fell $0.58 per share, or 15% to close trading at $3.26 per share.

4.      Behind the scenes, however, the truth was far more sinister than a mere "delay in compiling information."  In reality, the Company's CEO was deliberately stonewalling the auditors and special counsel brought in by the audit committee to investigate accounting improprieties at the Company.

5.      With the Company's CEO taking all possible steps to keep the auditors from doing their job investigating the reported sales and revenues of the Company, there was simply no way that the April 1, 2011 deadline could be met, despite these representations.

6.      After the close of the market on April 1, 2011, investors were shocked to discover that HQSM was still out of compliance with federal laws and AMEX listing standards, causing trading in the Company's shares to be suspended by the AMEX.  HQSM shares closed trading on April 1, 2011 at $2.78 per share, and have not resumed trading since.

CLASS ACTION COMPLAINT

- 2 -



7.      In a letter dated April 6, 2011 (which was filed as an Exhibit to the Company's Form 8-K filed on April 11, 2011), the Chairman of HQSM's audit committee of the board of directors, Andrew Intrader, abruptly resigned, and disclosed some of the previously undisclosed problems that were going on behind the scenes at HQSM.  Director Intrader disclosed, in great detail, the numerous steps that he had taken to try and unravel the accounting misconduct at the Company, including going so far as engaging the national law firm of Latham & Watkins to conduct an internal investigation.  Director Intrader also noted how the CEO of the Company had refused to cooperate into this investigation, and had blocked the Company's independent auditors from reviewing data necessary to audit the reported sales and revenues of HQSM.  As a result, Director Intrader felt "compelled by conscience" to resign his position as audit committee chairman and as a director of the Company.

8.      To this date, the Company has still not filed its financial reports, is still out of compliance with federal law and AMEX regulations, and has never resumed trading.  It is unclear when, if ever, the Company will come clean about its accounting.

## II.       JURISDICTION AND VENUE

9.      The claims asserted herein arise under and pursuant Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. § 240.10b-5].

10.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

11.      Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b).  Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.

12.      In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

CLASS ACTION COMPLAINT

1  limited to, the mails, interstate telephone communications and the facilities of the national

2  securities markets.

### III.    PARTIES

4      13.    Plaintiff Jason Moomjy, as set forth in the accompanying certification and

5  incorporated by reference herein, purchased the common stock of HQSM during the Class Period

6  and has been damaged thereby.

7      14.    Defendant HQSM is incorporated in Delaware and maintains its headquarters at

8  1511 Third Ave., Suite 788, Seattle, WA 98101.

9      15.    The following officers and directors of HQSM (the "Individual Defendants") are

10  also defendants in this action:

11          (a)    Defendant Norbert Sporns ("Sporns") is and was, at all relevant times, a

12  member of the board of directors and Chief Executive Officer of HQSM.

13          (b)    Defendant Jean-Pierre Dallaire ("Dallaire") is and was, at all relevant

14  times, the Chief Financial Officer, Chief Accounting Officer and financial controller of HQSM.

15      16.    During the Class Period, the Individual Defendants, as senior executive officers

16  and/or directors of HQSM, were privy to confidential and proprietary information concerning

17  HQSM, its operations, finances, financial condition and present and future business prospects.

18  The Individual Defendants also had access to material adverse non-public information

19  concerning HQSM, as discussed in detail below.  Because of their positions with HQSM, the

20  Individual Defendants had access to non-public information about its business, finances,

21  products, markets and present and future business prospects via internal corporate documents,

22  conversations and connections with other corporate officers and employees, attendance at

23  management and/or board of directors meetings and committees thereof and via reports and other

24  information provided to them in connection therewith.  Because of their possession of such

25  information, the Individual Defendants knew or recklessly disregarded that the adverse facts

26  specified herein had not been disclosed to, and were being concealed from, the investing public.



CLASS ACTION COMPLAINT

HAGENS BERMAN
1918 Eighth Avenue, Suite 3300 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

17.     The Individual Defendants are liable as direct participants in the wrongs complained of herein.  In addition, the Individual Defendants, by reason of their status as senior executive officers and/or directors, were "controlling persons" within the meaning of Section 20(a) of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein.  Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of HQSM's business.

18.     The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and through them, to the investing public.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

19.     As senior executive officers and/or directors and as controlling persons of a publicly traded company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on The American Stock Exchange ("AMEX") and governed by the federal securities laws, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with respect to HQSM's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of HQSM's common stock would be based upon truthful and accurate information.  The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

20.     The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of HQSM's common stock by



HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding HQSM's business, operations and management and the intrinsic value of HQSM's securities; (ii) allowed the Company to complete an offering of 1.4 million shares of its common stock on or about June 12, 2009, whereby the Company received approximately $11.9 million in net proceeds; (iii) allowed the Company to complete an offering of 3,202,999 shares of its common stock and warrants to purchase up to 1,601,499 shares of its common stock on or about August 10, 2010, whereby the Company received approximately $11.5 million in gross proceeds; and (iv) caused Plaintiff and members of the Class to purchase HQSM common stock at artificially inflated prices.

## IV. CLASS ACTION ALLEGATIONS

21.   Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased the common stock of HQSM between May 11, 2009 and April 1, 2011, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

22.   The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, HQSM common stock was actively traded on the AMEX. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by HQSM or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.



CLASS ACTION COMPLAINT

- 6 -

23.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law complained of herein.

24.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

25.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of HQSM;

(c)     whether the price of HQSM common stock was artificially inflated during the Class Period; and

(d)     to what extent the members of the Class have sustained damages and the proper measure of damages.

26.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

CLASS ACTION COMPLAINT



HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

V.      SUBSTANTIVE ALLEGATIONS

**A.    Background**

27.     Defendant HQ Sustainable Maritime Industries, Inc. engages in the production and marketing of health products derived from marine based raw materials, as well as Tilapia.  It practices cooperative farming of sustainable aquaculture, produces all-natural enriched feeds, Tilapia value added products, and health products.  The company markets its nutraceutical and health products, including its Omojo branded health products through retail and franchise sales in China.  It produces and sells certified, value added seafood products, including 'Gluten Free' 'Lillian's Healthy Gourmet' products in the United States.  HQ Sustainable Maritime Industries, Inc. was founded in 1989 and is headquartered in Seattle, Washington.

28.     On May 8, 2009, HQSM's shares closed trading at $9.47 per share.

**B.    Materially False and Misleading Statements Issued During the Class Period**

29.     The Class Period begins on May 11, 2009 with the announcement of the Company's operating results for Q1 2009 (which ended March 31, 2009) in a press release that touted an 18% increase in sales for the quarter:

> **HEADLINE: HQ Sustainable Maritime Reports First Quarter Results; Sales Increased 18% Year-Over-Year**
>
> DATELINE: SEATTLE, WA; May 11, 2009
>
> BODY:
>
> HQ Sustainable Maritime Industries, Inc.  (NYSE Amex: HQS ) ("HQS" or the "Company"), a leader in all natural integrated aquaculture and aquatic product processing including fish byproduct personal healthcare products, today announced its financial results for the first quarter ended March 31, 2009.
>
> First Quarter 2009 Results
>
> For the quarter ended March 31, 2009, sales increased by 18% to $10.8 million, compared to $9.2 million for the first quarter of 2008. The Aquaculture Product segment accounted for $7.3 million in sales, up 12% from $6.5 million reported for the same period last year. Sales from the Health and Bio-product segment



HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

were $3.5 million, up 32% from $2.6 million for the first quarter of 2008.

The gross profit for the first quarter of 2009 increased by 22% to $4.8 million, compared to gross profit of $3.9 million for the same period of 2008. The overall gross profit ratio increased to 44%, compared to 42% for the three month period ended in March 31, 2008.

I am very pleased by our performance during the first quarter. We hit the ground running in 2009, building upon the momentum we gained from a very strong 2008. Our growth this quarter was achieved in spite of this being a traditionally slower period as a result of decreased business activity surrounding the Chinese New Year. Our business also proved resilient in a tough global economic environment, as we experienced strong sales improvements in both of our segments.

This press release was materially false and misleading in that the financial results therein were only achieved through the use of accounting trickery and did not comply with GAAP. Further, Defendant Sporns' comments regarding sales growth were materially false and misleading for the same reasons.

30.     Also on May 11, 2009, the Company filed its quarterly report on Form 10-Q with the SEC for Q1 2009, which ended on March 31, 2009. This report was signed by Defendants Sporns and Dallaire in their capacities as CEO and Chief Accounting Officer, respectively. This filing contained the same financial results as included in the May 11, 2009 press release, and was materially false and misleading for the same reasons.

31.     On May 11, 2009, HQSM shares closed trading at $9.91 per share – a gain of $0.44 per share (4.6%).

32.     Also included in this Form 10-Q were sworn certifications of Defendants Sporns and Dallaire made pursuant to the requirements of 18 U.S.C. § 1350 that attested to the truthfulness of the disclosures in the Form 10-Q, as well as to the accuracy and effectiveness of HQSM's systems of accounting internal control. For example, Defendant Sporns' sworn certification was as follows:



CLASS ACTION COMPLAINT

Certification pursuant to 18 U.S.C. Section 1350 as adopted pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 and pursuant to Rule 13a-14(a) and Rule 15d-14(a) under the Securities Exchange Act of 1934

I, Norbert Sporns, Chief Executive Officer of the Company, certify that:

1. I have reviewed this quarterly report on Form 10-Q of HQ Sustainable Maritime Industries, Inc.;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The Registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f) for the registrant and have:

(a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the Issuer, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c) Evaluated the effectiveness of the Issuer's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and



HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

(d) Disclosed in this report any change in the Issuer's internal control over financial reporting that occurred during the Registrant's fiscal quarter ending March 31, 2009 that has materially affected, or is reasonably likely to materially affect, the Issuer's internal control over financial reporting; and

5. The Registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the Registrant's auditor and the audit committee of the Registrant's board of directors (or persons performing the equivalent functions):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

33.     Defendant Dallaire signed an essentially identical sworn certification, which was also attached to the May 11, 2009 Form 10-Q.  Together, these certifications are hereinafter referenced as the "Sarbanes-Oxley Certifications," and were made again with respect to each quarterly and annual report filed with the SEC throughout the Class Period.

34.     These Sarbanes-Oxley Certifications were materially false and misleading because the Individual Defendants were aware that the financial statements were materially misrepresented through the inclusion of material amounts of "sales" that did not qualify for inclusion under relevant accounting standards, and that HQSM's systems of accounting internal control were materially flawed, and not properly designed to ensure accurate financial reporting.

35.     On June 17, 2009, the Company announced the completion of an offering of 1.2 million shares of stock for total proceeds to the Company of $10.4 million.

36.     On June 30, 2009, HQSM announced in a press release that its underwriter had exercised an over-allotment option to purchase an additional 183,750 shares of Company stock

CLASS ACTION COMPLAINT

- 11 -



HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1   related to the June 17, 2009 offering for an additional $1.5 million in gross proceeds to the

2   Company.

3           37.     On August 10, 2009, HQSM announced its operating results for Q2 2009, ended

4   June 30, 2009, in a press release:

**HEADLINE: HQ Sustainable Maritime Reports Second
Quarter Results;   EBITDA up 525% to $3.2 Million From
$512,000 in Q2 2008**

DATELINE: SEATTLE, WA; Aug 10, 2009

BODY:

HQ Sustainable Maritime Industries, Inc.  (NYSE Amex: HQS )
("HQS" or the "Company"), a leader in all natural integrated
aquaculture and aquatic product processing, including fish
byproduct personal healthcare products, today announced its
financial results for the second quarter ended June 30, 2009.

Second Quarter 2009 Results

For the quarter ended June 30, 2009, sales increased by 10% to $16
million, compared to $14.5 million for the second quarter of 2008.
The Aquaculture Product segment accounted for $10.5 million in
sales, up 9% from $9.6 million reported for the same period last
year. Sales from the Health and Bio-product segment were $5.5
million, up 12% from $4.9 million for the second quarter of 2008.

Gross profit for the second quarter of 2009 increased by 37% to
$6.8 million, compared to gross profit of $5 million for the same
period of 2008.

*    *    *

The second quarter once again saw strong top line growth across
our business segments, and though our net income was adversely
affected by new accounting rules, we believe that this revenue
growth demonstrates the significant leverage that our business
model continues to hold. Highlights for the second quarter also
included very favorable increases in our gross profit margins.
Fueling this leverage and our continued vertical integration was the
recent completion of our feed mill. This addition renders our feed
the most efficient feed available in China to Tilapia farmers,
reducing feed cost for farmers while guaranteeing for consumers
quality at a very high level, said Norbert Sporns, CEO of HQ
Sustainable Maritime Industries, Inc.



CLASS ACTION COMPLAINT

This press release was materially false and misleading because the reported financial results therein were false, and did not comply with GAAP or relevant SEC regulations.  Further, Defendant Sporns' comments regarding "revenue growth" and "top line growth" were materially false and misleading for the same reasons.

38.     Also on August 10, 2009, HQSM filed its quarterly report for Q2 2009 on Form 10-Q with the SEC.  This Form 10-Q was signed by Defendants Sporns and Dallaire and contained the same financial information as the August 10, 2009 press release, and was materially false and misleading for the same reasons.  Further, this Form 10-Q contained identical Sarbanes-Oxley Certifications to the Q1 2009 Form 10-Q that were signed by Defendants Sporns and Dallaire, and which were materially false and misleading as the Sarbanes-Oxley Certifications contained in the Q1 2009 Form 10-Q.

39.     On November 9, 2009, HQSM announced its operating results for Q3 2009, ending on September 30, 2009, in a press release highlighting a significant increase in gross profit margin:

> **HEADLINE: HQ Sustainable Maritime Reports Third Quarter Results; Gross Profit Margin up 17.3% From the First Nine Months of 2008**
>
> DATELINE: SEATTLE, WA; Nov 09, 2009
>
> BODY:
>
> HQ Sustainable Maritime Industries, Inc.  (NYSE Amex: HQS ) ("HQS" or the "Company"), a leader in all natural integrated aquaculture and aquatic product processing, including fish byproduct and personal healthcare products, today announced its financial results for the third quarter ended September 30, 2009.
>
> Third Quarter 2009 Results
>
> For the quarter ended September 30, 2009, sales decreased by 1.4% to $22.2 million, compared to $22.4 million for the third quarter of 2008. The Aquaculture Product segment accounted for $14 million in sales, down 7% from $15.1 million reported for the same period last year. Sales from the Health and Bio-product segment were $8.1 million, up 10% from $7.3 million for the third quarter of 2008.

CLASS ACTION COMPLAINT

- 13 -



1918 Eighth Avenue, Suite 3300 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1

\*   \*   \*

2 Net income for the third quarter was $4 million, or $0.268 cents
3 per fully diluted share compared to net income of $5.6 million, or
 $0.427 cents per fully diluted share, for the third quarter of 2008.
4 Net income during the current quarter was affected by increases in
 doubtful accounts of approximately $1,606,000 and marketing and
5 advertising expenses by approximately $979,000 from the health
 and bio-product segment.

6 Our Company continues to see significant demand for its biomass
 products, and to benefit from the manner in which we have
7 balanced our portfolio of product offerings to reduce the impact of
 seasonality and price fluctuations. During the quarter, increased
8 demand for our Marine Bio and Healthcare products resulted in
 much improved sales, and helped to mitigate the impact of the
9 reduction in the selling price of tilapia in our aquatic products
 segment that we have seen this year. Increased vertical integration
10 is also beginning to pay dividends, as we saw decreased raw
 material costs with respect to our fish and other indirect expenses
11 during the quarter. This has resulted in a significant improvement
 in our profitability so far in 2009, and we hope to see this trend
12 continued in future quarters, said Norbert Sporns, CEO of HQ
 Sustainable Maritime Industries, Inc.

13

14 This press release was materially false and misleading because the reported financial results

15 therein were false, and did not comply with GAAP or relevant SEC regulations.  Further,

16 Defendant Sporns' comments regarding "much improved sales" and "significant improvement in

17 profitability" were materially false and misleading for the same reasons.

18 40. Also on November 9, 2009, HQSM filed its quarterly report for Q3 2009 on Form

19 10-Q with the SEC.  This Form 10-Q was signed by Defendants Sporns and Dallaire and

20 contained the same financial information as the November 9, 2009 press release, and was

21 materially false and misleading for the same reasons.  Further, this Form 10-Q contained

22 identical Sarbanes-Oxley Certifications to the Q1 2009 Form 10-Q that were signed by

23 Defendants Sporns and Dallaire, and which were materially false and misleading as the

24 Sarbanes-Oxley Certifications contained in the Q1 2009 Form 10-Q.

25 41. On March 15, 2010, HQSM announced its operating results for Q4 2009 and the

26 year ended December 31, 2009 in a press release.



CLASS ACTION COMPLAINT

HQ Sustainable Maritime Industries, Inc. (NYSE Amex: HQS ) ("HQS" or the "Company"), a leading producer of functional, sustainable Tilapia biomass, including fish and personal healthcare products, today reported financial results for the fourth quarter and full year ended December 31, 2009.

Fourth Quarter 2009 Results

For the fourth quarter of 2009, net sales increased 8.2% to $23.3 million, compared to $21.5 million for the fourth quarter of the prior year. The increase in net sales was primarily the result of a strong performance in the health and bio-product segment.

\*   \*   \*

Net income for the fourth quarter of 2009 was $1.6 million, or $0.12 per diluted share compared to net income of $6.4 million, or $0.53 per diluted share in the fourth quarter of 2008. Net income during the fourth quarter of 2009 was affected by increases in doubtful accounts of approximately $2.9 million and an increase in marketing and advertising expenses by approximately $1.8 million from the health and bio-product segment.

The Company successfully expanded its sales of high quality, health and bio-products made from Tilapia by-products, in response to a landmark shift in China food safety legislation passed in March of 2009, which caused the closure of several of China's health and food product manufacturing facilities. This unprecedented opportunity for our Company in China has resulted in a short term increase in receivables and higher marketing expenses in our health and bio-product segment, said Norbert Sporns, HQ Sustainable Maritime's President and Chief Executive Officer. In 2010, we believe our efforts to reposition our Company behind higher margin product categories combined with increased operating efficiencies from our vertically integrated operations will enable us to realize an exceptional period of strong sales, margin expansion, and long-term profitable growth.

This press release was materially false and misleading because the reported financial results therein were false, and did not comply with GAAP or relevant SEC regulations. Further, Defendant Sporns' comments regarding sales were materially false and misleading for the same reasons.

42.   Also on March 15, 2010, HQSM filed its quarterly report for Q4 2009 and the year ended December 31, 2009 on Form 10-K with the SEC. This Form 10-K was signed by Defendants Sporns and Dallaire and contained the same financial information as the March 15,

CLASS ACTION COMPLAINT

- 15 -



1918 Eighth Avenue, Suite 3300 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1   2010 press release, and was materially false and misleading for the same reasons.  Further, this

2   Form 10-K contained identical Sarbanes-Oxley Certifications to the Q1 2009 Form 10-Q that

3   were signed by Defendants Sporns and Dallaire, and which were materially false and misleading

4   as the Sarbanes-Oxley Certifications contained in the Q1 2009 Form 10-Q.

5       43.   On May 10, 2010, HQSM announced its operating results for the first quarter of

6   2010 in a press release.   These reported financial results showed a marked improvement over the

7   previous year's reported financial results:

**HQ Sustainable Maritime Industries, Inc. Announces First Quarter 2010 Financial Results**

**First Quarter Sales Increased 33% to $14.4 Million, Compared to $10.8 Million Last Year; Operating Income Increased 61% to $1.6 Million; Company Generated EBITDA of $2.1 Million for the First Quarter, an Increase of 42%**

SEATTLE, WA, May 10, 2010 (Marketwire) --

SEATTLE, WA -- (Marketwire) -- 05/10/10 -- HQ Sustainable Maritime Industries, Inc. (NYSE Amex: HQS) ("HQS" or the "Company"), a leading producer of functional, sustainable Tilapia biomass, including fish and personal healthcare products, today reported financial results for the first quarter ended March 31, 2010.

First Quarter 2010 Results
For the first quarter of 2010, sales increased 33% to $14.4 million, compared to $10.8 million for the first quarter of the prior year. The increase in sales was primarily the result of strength across each segment including aquaculture products, health and bio-products, as well as the new feed products added in late 2009.

*   *   *

Net income for the first quarter of 2010 was $1.5 million, or $0.09 per diluted share compared to net income of $1.1 million, or $0.09 per diluted share in the first quarter of 2009. Net income during the first quarter of 2010 was positively impacted by the net recovery in doubtful accounts of approximately $0.7 million and a decrease in marketing and advertising expenses by approximately $0.4 million from the health and bio-product segment.

We are pleased to report a strong improvement in our sales and profitability. In the first quarter, we successfully recovered more than 80% of our doubtful accounts. The provisions for doubtful

CLASS ACTION COMPLAINT



1918 Eighth Avenue, Suite 3300 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

accounts were made in prior quarters as a result of a planned, strategic investment in our health and bio-product segment, in order to capture greater market share, said Norbert Sporns, HQ Sustainable Maritime's President and Chief Executive Officer. We continue to focus on being leaders in the value added use of Tilapia fillet and Tilapia by-products. We are building strong international partnerships across each of our product segments through the credibility and efficacy of our products and brands. These partnerships give us great confidence in our business model and our long-term growth opportunities."

This press release was materially false and misleading because the reported financial results therein were false, and did not comply with GAAP or relevant SEC regulations. Further, Defendant Sporns' comment regarding the "strong improvement" in sales was materially false and misleading for the same reasons.

44. Also on May 10, 2010, HQSM filed its quarterly report for Q1 2010 on Form 10-Q with the SEC. This Form 10-Q was signed by Defendants Sporns and Dallaire and contained the same financial information as the May 10, 2010 press release, and was materially false and misleading for the same reasons. Further, this Form 10-Q contained identical Sarbanes-Oxley Certifications to the Q1 2009 Form 10-Q that were signed by Defendants Sporns and Dallaire, and which were materially false and misleading as the Sarbanes-Oxley Certifications contained in the Q1 2009 Form 10-Q.

45. On August 9, 2010, HQSM announced its Q2 2010 financial results in a press release. This release touted the Company's impressive second quarter sales growth of 29%:

**HQ Sustainable Maritime Industries, Inc. Announces Second Quarter 2010 Financial Results**

**Second Quarter Sales Increased 29% to $20.7 Million, Compared to $16 Million Last Year**

SEATTLE, WA, Aug. 9, 2010 (Marketwire) --

SEATTLE, WA -- (Marketwire) -- 08/09/10 -- HQ Sustainable Maritime Industries, Inc. (NYSE Amex: HQS) ("HQS" or the "Company"), a leading producer of functional, sustainable Tilapia biomass, including fish and personal healthcare products, today reported financial results for the second quarter ended June 30, 2010.



1918 Eighth Avenue, Suite 3300 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

CLASS ACTION COMPLAINT

Second Quarter 2010 Results

For the second quarter of 2010, sales increased 29% to $20.7 million, compared to $16 million for the second quarter of the prior year. The increase in sales was primarily the result of strength from the new feed products added in late 2009.

\* \* \*

Net income for the second quarter of 2010 was $1.3 million, or $0.07 per diluted share calculated on 14.9 million diluted shares compared to net income of $1.1 million, or $0.09 per diluted share calculated on 12.6 million diluted shares in the second quarter of 2009.

\* \* \*

We are pleased to report strong revenue growth for the second quarter. Operationally our results improved sequentially and we are optimistic about our future growth in each of our three primary product segments, said Norbert Sporns, HQ Sustainable Maritime's President and Chief Executive Officer.  We are laying the foundation to deliver long-term value to our shareholders. We continue to focus on execution, including increased sales of our diversified products, increased margin expansion, and vertical integration in the production of our all-natural Tilapia aquaculture bio-mass which will further reduce the costs of production and increase long-term profitable growth and cash flow generation.

This press release was materially false and misleading because the reported financial results therein were false, and did not comply with GAAP or relevant SEC regulations.  Further, Defendant Sporns' comment regarding the "strong revenue growth" was materially false and misleading for the same reasons.

46.     Also on August 9, 2010, HQSM filed its quarterly report for Q2 2010 on Form 10-Q with the SEC.  This Form 10-Q was signed by Defendants Sporns and Dallaire and contained the same financial information as the August 9, 2010 press release, and was materially false and misleading for the same reasons.  Further, this Form 10-Q contained identical Sarbanes-Oxley Certifications to the Q1 2009 Form 10-Q that were signed by Defendants Sporns and Dallaire, and which were materially false and misleading as the Sarbanes-Oxley Certifications contained in the Q1 2009 Form 10-Q.

CLASS ACTION COMPLAINT



HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

47.     On August 10, 2010, HQSM announced in a press release that its excellent reported financial results had allowed it to sell more than $11.5 million of Company stock and warrants to an unsuspecting market:

**HQ Sustainable Maritime Industries, Inc. Announces Pricing of Follow-On Offering**

SEATTLE, WA, Aug. 10, 2010 (Marketwire) --

SEATTLE, WA -- (Marketwire) -- 08/10/10 -- HQ Sustainable Maritime Industries, Inc. (NYSE Amex: HQS) ("HQS" or the "Company"), a leading producer of functional, sustainable Tilapia biomass, including fish and personal healthcare products, today announced the pricing of a follow-on public offering of 3,202,999 units at $3.6125 per unit for an aggregate of 3,202,999 shares of common stock and warrants to acquire 1,601,499 shares of common stock. Each unit consists of one common share and 0.5 of a warrant, with a per share exercise price of $4.5156.

The Company will receive $11,570,834 million in gross proceeds, prior to deducting underwriting discounts and commissions and offering expenses payable by the Company. The Company expects to use these proceeds for general corporate purposes, including investments in its Marine Bio and Healthcare Products segment. The offering is expected to close on August 13, 2010.

48.     On November 9, 2010, HQSM announced its Q3 2010 financial results in a press release:

**HQ Sustainable Maritime Industries, Inc. Announces Third Quarter 2010 Financial Results**

**Third Quarter Sales Increased 27% to $28.2 Million, Compared to $22.2 Million Last Year**

**Company Generated Third Quarter EBITDA of $8.0 Million, an Increase of 63%**

**Net Income Grew 70% to $6.9 Million, Compared to $4.0 Million Last Year**

Nov. 9, 2010 (Marketwire) --

SEATTLE, WA -- (Marketwire) -- 11/09/10 -- HQ Sustainable Maritime Industries, Inc. (NYSE Amex: HQS) ("HQS" or the "Company"), a leading producer of functional, sustainable Tilapia biomass, including fish and personal healthcare products, today

CLASS ACTION COMPLAINT



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

reported financial results for the third quarter ended September 30, 2010.

Third Quarter 2010 Results
For the third quarter of 2010, sales increased 27% to $28.2 million, compared to $22.2 million for the third quarter of the prior year. The increase in sales was primarily the result of strength from the new feed products added in late 2009.

\*   \*   \*

Net income for the third quarter of 2010 increased by 70% or $2.8 million to $6.9 million, or $0.40 per diluted share calculated on 16.6 million diluted shares compared to net income of $4.0 million, or $0.27 per diluted share calculated on 14.8 million diluted shares in the third quarter of 2009. Although the overall gross profit was less in the third quarter of 2010, the bad debt recovery had the most significant positive impact on the current quarterly results.

This press release was materially false and misleading because the reported financial results therein were false, and did not comply with GAAP or relevant SEC regulations.

49.    Also on November 9, 2010, HQSM filed its quarterly report for Q3 2010 on Form 10-Q with the SEC.  This Form 10-Q was signed by Defendants Sporns and Dallaire and contained the same financial information as the November 9, 2010 press release, and was materially false and misleading for the same reasons.  Further, this Form 10-Q contained identical Sarbanes-Oxley Certifications to the Q1 2009 Form 10-Q that were signed by Defendants Sporns and Dallaire, and which were materially false and misleading as the Sarbanes-Oxley Certifications contained in the Q1 2009 Form 10-Q.

50.    On November 15, 2010, TheStreet.com identified HQSM as one of the "winners" for the week based on his large price gains related to its Q3 earnings announcement:

NEW YORK (TheStreet) -- Global equity markets fell last week on fears of China's tightening monetary policy and weakening confidence in the U.S. economic recovery. China: Winners and Losers:  HQ Sustainable Maritime Industries (HQS:AMEX) was the top gainer with a 34.5% increase. Third-quarter sales were up 27% to $28.2 million from the year-ago period, following strong new feed products sales. Net income for the quarter jumped 70% to $6.9 million, or 40 cents a share.



CLASS ACTION COMPLAINT

1918 Eighth Avenue, Suite 3300 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

51.     On March 9, 2011, HQSM announced that it would disclose its operating results for Q4 2010 and the year ended December 31, 2010 after the close of the market on March 16, 2011.  The Company also disclosed that it would host an associated conference call, led by Defendants Sporns and Dallaire, at 4:30 p.m. ET on March 16, 2011:

> **HQ Sustainable Maritime Industries, Inc. to Announce Results for the Fourth Quarter and Fiscal Year Ended December 31, 2010**
>
> Mar. 9, 2011 (Marketwire) --
>
> SEATTLE, WA -- (Marketwire) -- 03/09/11 -- HQ Sustainable Maritime Industries, Inc. (NYSE Amex: HQS) ("HQS" or the "Company"), a leading producer and marketer of health products derived from marine based raw materials as well as Tilapia resulting from vertically integrated operations, will announce results for the fourth quarter and fiscal year ended December 31, 2010 on Wednesday, March 16, 2011, after the market close. The Company will also host a conference call to discuss these results with additional comments and details. Participating on the call will be Norbert Sporns, President and Chief Executive Officer, and Jean-Pierre Dallaire, Chief Financial Officer.
>
> The conference call is scheduled to begin at 4:30 p.m. ET on March 16, 2011. The call will be broadcast live over the Internet hosted at the Investor Relations section of HQ Sustainable Maritime's website at http://www.hqfish.com/, and will be archived online through March 25, 2011. In addition, domestic participants may dial (877) 407-9039 and international participants may dial (201) 689-8470 to listen to the live broadcast.

52.     On March 16, 2011, the Company announced in a press release that it would file a Notification of Late Filing on Form 12b-25 with the SEC, allowing it to postpone the filing of its annual report on Form 10-K for fifteen calendar days, or until April 1, 2011.  The Company disclosed that it "fully expected" to file the Form 10-K by the April 1, 2011 deadline:

> HQ Sustainable Maritime Industries, Inc. to Postpone Fourth Quarter and Fiscal Year 2010 Earnings Release Date
> Mar. 16, 2011 (Marketwire) --
>
> SEATTLE, WA -- (Marketwire) -- 03/16/11 -- HQ Sustainable Maritime Industries, Inc. (NYSE Amex: HQS) ("HQS" or the "Company"), a leading producer and marketer of health products derived from marine based raw materials as well as Tilapia



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

resulting from vertically integrated operations, will postpone the release of their fourth quarter and fiscal year 2010 earnings. The Company will file a Notification of Late Filing on Form 12b-25 with the United States Securities and Exchange Commission for its Annual Report on Form 10-K for the year ended December 31, 2010. The Form 12b-25 will allow the Company an additional 15 calendar days to file the Form 10-K which is otherwise due on March 16, 2011. Details regarding the specific release date and conference call will be provided in a forthcoming news release.

The postponement in filing is due to delays in compiling information for the preparation of the financial statements. The Company fully expects to be able to file within the additional time allowed by the Form 12b-25 and plans to file as soon as possible following the completion of the audit of the financial statements.

**C.    HQSM Shares Are Suspended From Trading**

53.    On April 1, 2011, the Company announced that – despite its earlier representations -- it would be forced to "postpone" the filing of its annual report on Form 10-K for the year ended December 31, 2010:

> **HQ Sustainable Maritime Industries, Inc. Postpones Filing of Form 10-K for the Year Ended December 31, 2010**
>
> Apr. 1, 2011 (Marketwire) --
>
> SEATTLE, WA -- (Marketwire) -- 04/01/11 -- HQ Sustainable Maritime Industries, Inc. (NYSE Amex: HQS) ("HQS" or the "Company"), a leading producer and marketer of health products derived from marine based raw materials as well as Tilapia resulting from vertically integrated operations, has postponed the filing of its Form 10-K for the year ended December 31, 2010. The Company is postponing the filing of its Form 10-K because the audit of the Company's financial statements has not been completed due to difficulties and delays in obtaining and verifying certain information. The Company's independent auditors will continue to work toward the completion of the audit. The Company expects to complete the audit within approximately 30 days.

54.    In response to this shocking disclosure, the AMEX suspended HQSM shares from trading, and they remain suspended to the current date.  The last trade of HQSM shares on April 1, 2011 was at $2.78 per share.



1918 Eighth Avenue, Suite 3300 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1

## VI.     POST-CLASS PERIOD DISCLOSURES CONFIRM THE FRAUD

2

**A.     Resignation of Andrew Intrader**

3        55.     On April 6, 2011, the Chairman of HQSM's audit committee, Andrew Intrader,

4    abruptly resigned in a letter to Defendant Sporns, stating that he was "compelled by conscience"

5    to resign because of the roadblocks thrown up by Defendant Sporns and others to keep the

6    Company's auditors from being able to review the alleged "sales" made by the Company:

7                As you are aware, over the last few weeks issues have been raised
                 during the audit process focusing on difficulties in verifying
8                information relating to company accounts and customer positions.
                 During that time, the audit committee has asked repeatedly that
9                management cooperate with the audit process and provide the
                 requested information and verifications on terms that were
10               acceptable to both the auditors and company management. Those
                 efforts were met with delay and resistance. While some steps were
11               taken to address the situation, they were insufficient to resolve the
                 issues. Just to be clear, I will discuss some of these details below.
12
                 On Tuesday (March 29), following discussions with you and other
13               directors and in my capacity as Audit Committee Chairman, I
                 engaged Latham & Watkins to conduct an independent inquiry into
14               the concerns that developed during the audit process as to the
                 possible breach of procedures relating to the verification or
15               confirmation of company accounts and customer positions and the
                 extent to which that possible breach extended beyond a handful of
16               incidents. All of this was under the pressure of the filing deadline,
                 when time was of the essence. That deadline was missed, however,
17               and the trading of the company's stock was suspended as of April
                 1, 2011.
18
                 At the time that I initiated the independent inquiry, you pledged
19               your cooperation. Latham & Watkins tendered a list of requests to
                 the company through lawyers at Troutman Sanders, which served
20               as outside counsel for the firm, and they subsequently requested
                 payment of a retainer to begin work. This was followed on
21               Thursday by a meeting of the board of directors in which the
                 members of the management team who serve on the board,
22               including you, Lillian Li and Harry Hua, initially declined to vote
                 affirmatively on two basic but key resolutions, one to retain
23               Troutman Sanders as counsel to the company with an enlarged
                 mandate to assist the internal inquiry and the second pledging the
24               company's cooperation in the internal inquiry. When I and some of
                 the other independent directors asked for the reasons for the
25               management team's troubling decision to refuse to vote for these
                 two important and essential resolutions, the reasons given - namely
26               that a resolution mandating cooperation was "insulting" and that

CLASS ACTION COMPLAINT



HB   HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Troutman Sanders had only been serving as securities counsel-were not compelling. Unfortunately, it took me and some of the other independent directors to convince you and the management team to vote for these resolutions.

\* \* \*

I understand that yesterday you met with the auditors in Toronto in a meeting in which little or no progress was made in addressing the significant issues that remain open in the audit process. Moreover, I still have not heard from you, even though you have been in contact with other members of the management team, other board members, and the auditors. Yesterday evening, I renewed my requests for the payment of the appropriate retainers and the production of important information and documents that are essential preliminary steps to launching the independent inquiry. I also added a request to see a draft of the 8K filing which must be made tomorrow. I asked that those items be complied with by 1 PM today. As of that time, aside from the efforts of Jean Pierre to collect documents under his control regarding activities in the United States, none of my requests had been complied with.

This series of events, beginning gradually during the difficulties in the audit process and then increasing over the last week, the uncooperative conduct of the management team at the board of directors meeting, and now the current failure to communicate with me at a point when every second counts, coupled with a pattern of decisions by management that are difficult for me to understand, have left the company without its long-standing outside counsel at a crucial moment, have failed to advance the audit process and have failed even to initiate, let alone move forward, the independent inquiry, leads me to the conclusion that I can no longer be effective in my efforts to help the company move forward. My interest in seeing this process through to its completion remains unwavering, but the continued resistance of management to these necessary steps has made it impossible to advance this effort. **Accordingly, I am compelled by conscience to resign from the board of directors and the audit committee, effective immediately**. (emphasis added).

56.     Director Intrader also cited another reason in his letter for his concern about the management of the Company – that the Company had failed to file a notice of claim with the Company's directors' and officers' liability insurance policy, presumably to address misconduct by certain officers and directors of the Company.  The Company's legal counsel was so concerned about this misconduct (and other misconduct at the Company), that they resigned as legal counsel to HQSM.



CLASS ACTION COMPLAINT

1918 Eighth Avenue, Suite 3300 • Seattle, WA 98101
(206) 623-7292 • FAX (206) 623-0594

57.     On April 7, 2011, the Company announced in a press release that

**HQ Sustainable Maritime Industries, Inc. Receives NYSE Amex Notification Regarding Noncompliance With Continued Listing Standards**

Apr. 7, 2011 (Marketwire) --

SEATTLE, WA -- (Marketwire) -- 04/07/11 -- HQ Sustainable Maritime Industries, Inc. (NYSE Amex: HQS) ("HQS" or the "Company"), a leading producer and marketer of health products derived from marine based raw materials as well as Tilapia resulting from vertically integrated operations, announced today that it had received a notice from the NYSE Amex dated April 1, 2011 stating that the Company was not in compliance with certain continued listing standards of the NYSE Amex Company Guide. Specifically, the Company was not in compliance with standards set forth under Sections 134 and 1101 of the Exchange Company Guide since the Company has not yet filed its Annual Report on Form 10-K for the fiscal year ended December 31, 2010. The Exchange notified the Company that pursuant to Section 1003(d) of the Company Guide, the Exchange was authorized to suspend and, unless prompt corrective action is taken, remove the Company's securities from the Exchange. Currently, the trading in the Company's securities has been halted.

58.     On April 13, 2011, the Company announced in a press release that the resignation of Director Intrader was another reason that HQSM was not in compliance with listing standards for the American Stock Exchange:

**HQ Sustainable Maritime Industries, Inc. Receives NYSE Amex Notification Regarding Noncompliance With Continued Listing Standards**

Apr. 13, 2011 (Marketwire) --

SEATTLE, WA -- (Marketwire) -- 04/13/11 -- HQ Sustainable Maritime Industries, Inc. (NYSE Amex: HQS) ("HQS" or the "Company"), a leading producer and marketer of health products derived from marine based raw materials as well as Tilapia resulting from vertically integrated operations, announced today it received a notice from the NYSE Amex LLC (the "Exchange") notifying the Company that, following resignation of its independent non-executive director and the Chairman of the Audit Committee effective April 6, 2011 (as disclosed in the Company's Current Report on Form 8-K filed with the Securities and Exchange Commission on April 11, 2011), the Company was not in compliance with continued listing standards set forth under Sections 802(a) and 803(B)(2)(a) of the Exchange Company



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

Guide. The foregoing Sections require a listed company to maintain a majority of independent directors on its Board of Directors and at least three independent directors on the company's Audit Committee. The Exchange staff noted that the Company will have until the earlier of (i) its next annual shareholder meeting or (ii) April 6, 2012, to regain compliance with the foregoing continued listing requirements. The Company has commenced its search for a candidate to fill in the vacancy resulting from the director resignation and will endeavor to complete the process and appoint such replacement to the Board and the Audit Committee as soon as practicable.

The Company was previously notified that it was not in compliance with continued listing standards set forth under Sections 134 and 1101 of the Exchange Company Guide since the Company was yet to file its Annual Report on Form 10-K for the fiscal year ended December 31, 2010. The trading in the Company's securities remains halted. A .BC indicator will be attached to the Company's ticker symbol in addition to the .LF indicator previously appended.

## VII.   ADDITIONAL SCIENTER ALLEGATIONS

59.    As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding HQSM, their control over, and/or receipt and/or modification of HQSM's allegedly materially misleading misstatements and/or their associations with the Company, which made them privy to confidential proprietary information concerning HQSM, participated in the fraudulent scheme alleged herein.

## VIII.   LOSS CAUSATION/ECONOMIC LOSS

60.    During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of HQSM common stock and operated as a fraud or deceit on Class Period purchasers of HQSM common stock by



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

failing to disclose and misrepresenting the adverse facts detailed herein.  When Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of HQSM common stock fell precipitously as the prior artificial inflation came out.  As a result of their purchases of HQSM common stock during the Class Period, Plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws.

61.     By failing to disclose to investors the adverse facts detailed herein, Defendants presented a misleading picture of HQSM's business and prospects.  Defendants' false and misleading statements had the intended effect and caused HQSM common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $9.77 per share on June 2, 2009.

62.     The decline in HQSM shares was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market.  The timing and magnitude of the price decline in HQSM common stock negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to Defendants' fraudulent conduct.  The economic loss, *i.e.*, damages, suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the prices of HQSM common stock and the subsequent significant decline in the value of HQSM common stock when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

## IX.     APPLICABILITY OF PRESUMPTION OF RELIANCE:  FRAUD ON THE MARKET DOCTRINE

63.     At all relevant times, the market for HQSM common stock was an efficient market for the following reasons, among others:

(a)     HQSM common stock met the requirements for listing, and was listed and actively traded on the AMEX, a highly efficient and automated market;



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

(b)     as a regulated issuer, HQSM filed periodic public reports with the SEC and the AMEX;

(c)     HQSM regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     HQSM was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

64.     As a result of the foregoing, the market for HQSM common stock promptly digested current information regarding HQSM from all publicly available sources and reflected such information in the prices of the stock.  Under these circumstances, all purchasers of HQSM common stock during the Class Period suffered similar injury through their purchase of HQSM common stock at artificially inflated prices and a presumption of reliance applies.

## X.     NO SAFE HARBOR

65.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized

CLASS ACTION COMPLAINT



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

and/or approved by an executive officer of HQSM who knew that those statements were false when made.

## COUNT I

### Violation of Section 10(B) of
### the Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

66.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

67.     During the Class Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

68.     Defendants:  (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

69.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for HQSM common stock.  Plaintiff and the Class would not have purchased HQSM common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

70.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of HQSM common stock during the Class Period.



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

CLASS ACTION COMPLAINT

1

2

## COUNT II

### Violation of Section 20(A) of
### the Exchange Act Against the Individual Defendants

71.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

72.     The Individual Defendants acted as controlling persons of HQSM within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By reason of their positions as officers and/or directors of HQSM, and their ownership of HQSM stock, the Individual Defendants had the power and authority to cause HQSM to engage in the wrongful conduct complained of herein.  By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## XI.     PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

CLASS ACTION COMPLAINT



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1

2    DATED this 28th day of April, 2011.

3

4                     By:  /s/ Steve W. Berman

5                          Steve W. Berman, WSBA #12536
                            Karl P Barth, WSBA #22780

6                    **HAGENS BERMAN SOBOL SHAPIRO LLP**
                    1918 Eighth Avenue, Suite 3300

7                    Seattle, Washington  98101
                    Telephone: (206) 623-7292

8                    Facsimile: (206) 623-0594

9                    *Attorneys for Plaintiffs*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26



## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

_Jason Moominy_ ("Plaintiff") declares as to the claims asserted under the federal securities laws, that:

    1.      Plaintiff has reviewed a complaint alleging securities fraud against HQ Sustainable Maritime, Inc. and related parties and authorized its filing.

    2.      Plaintiff did not acquire the security that is the subject of this action at the direction of Plaintiff's counsel in order to participate in this private action or any other litigation under the federal securities laws.

    3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

    4.      Plaintiff has made no transaction(s) during the Class Period in the securities that are the subject of this action except those set forth below:

Purchases:

| Date Purchased | Number of Shares | Price Per Share | Total Price ✱ |
|---|---|---|---|
| 12/16/09 | 90 | $6.72 | $605. |
| 11/27/09 | 100 | 6.95 | 695. |
| 11/10/09 | 200 | 7.46 | 1,492. |
| 11/10/09 | 150 | 7.05 | 1,057. |
| 10/19/09 | 150 | 8.28 | 1,242. |
| | | | |
| | | | |

✱Exclusive of brokerage Fees.

Sales:

| Date Sold | Number of Shares | Price Per Share | Total Price |
|-----------|------------------|-----------------|-------------|
|           |                  |                 |             |
|           |                  |                 |             |
|           |                  |                 |             |
|           |                  |                 |             |
|           |                  |                 |             |
|           |                  |                 |             |
|           |                  |                 |             |

5.     During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in the following actions filed under the federal securities laws except as detailed below:

6.     Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2<u>8</u> day of April, 2011.

By _____
Jason Moomjy